KEN NAGY (I.S.B. No. 6176)
ATTORNEY AT LAW
P.O. Box 164
Lewiston, Idaho 83501
Telephone: (208) 301-0126
Facsimile: (888) 291-3832
E-mail: knagy@lewiston.com

JESSICA MOSER (I.S.B. No. 8197)
ATTORNEY AT LAW
P.O. Box 9146
Moscow, Idaho 83843
Telephone: (208) 874-2058
Facsimile: (888) 291-3832
E-mail: jessicam@nezperce.org

ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, INC., ) | CASE NO. CV 12-645 |
| ) | |
| Plaintiff, ) | VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL |
| ) | |
| vs. ) | |
| ) | |
| MICHAEL'S MANOR, L.L.C. and SHEILA ELAINE SHURTLIFF, ) | |
| ) | |
| Defendants. ) | |

COMES NOW the Plaintiff Intermountain Fair Housing Council, Inc. and for a cause of

action against the Defendants Michael's Manor, L.L.C. and Sheila Elaine Shurtliff, states and

alleges as follows:

VERIFIED COMPLAINT AND                    1
DEMAND FOR JURY TRIAL

<u>NATURE OF THE ACTION</u>

1.   This is an action brought by the above-named Plaintiff for declaratory judgment, permanent injunctive relief and damages on the following bases:

      <u>a.  Fair Housing Act,</u> 42 U.S.C. §3601 et seq. (hereinafter "FHA"), and in particular:

          i.  Discrimination in the sale or rental, or otherwise made unavailable, a dwelling because of "handicap", 42 U.S.C. §3604(f);

          ii.  Discriminatory terms, conditions or privileges in the sale or rental of a dwelling because of "handicap", 42 U.S.C. §3604(f);

          iii.  Refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a person equal opportunity to use and enjoy a dwelling, 42 U.S.C. §3604(f);

          iv.  Making, printing or publishing a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap", 42 U.S.C. §3604(c); and

          v.  Interference, coercion or intimidation, 42 U.S.C. §3617.

      <u>b.  Fair Housing Regulations,</u> 24 C.F.R. §100 et seq.

      <u>c.  Negligence.</u>

<u>JURISDICTION AND VENUE</u>

2.   This Court has jurisdiction over this action pursuant to 42 U.S.C. §3613 and 28 U.S.C. §§1331, 1332, 1337, 1343, 1367 and 2201.  The amount in controversy exceeds $75,000 exclusive of interests and costs.  Venue is proper in this District in that the claims alleged herein arose in the City of Chubbuck, County of Bannock, State of Idaho.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY**
**JESSICA MOSER**
**Attorneys at Law**

<u>PARTIES</u>

3.   The Plaintiff Intermountain Fair Housing Council, Inc. (hereinafter "the Plaintiff" or "IFHC") is a private, nonprofit organization organized under the laws of the State of Idaho with its principal place of business at 350 North 9th Street, Suite M-100, Boise, Idaho 83702.  Its mission is to advance equal access to housing for all persons without regard to race, color, sex, religion, national origin, familial status, or disability (the term "handicap", as that term is used and defined in the FHA, is used herein interchangeably with the term "disability").  The Plaintiff serves housing consumers through, among other things, education on the fair housing laws and assistance with complaints.

4.   The Defendant Michael's Manor, L.L.C. (hereinafter "Defendant Michael's Manor"), is a business organized under the laws of the State of Idaho.  Its principal place of business is 727 Moran Street, Chubbuck, Idaho 83202-1743.  Said Defendant operates the Michael's Manor Apartments (hereinafter "the Subject Property"), a multifamily apartment complex which is the real property that is the subject of this proceeding and which is located at 730 Swisher Road, Pocatello, Idaho 83204.  The Subject Property is composed of one two-story building containing 39 individual dwelling.  The Certificate of Occupancy was issued with regards to the Subject Property by Bannock County, Idaho on the 3rd day of September, 1995.  The Subject Property is a covered dwelling subject to the requirements of the FHA, as provided by 42 U.S.C. §3603.

5.   The Defendant Sheila Elaine Shurtliff (hereinafter "Defendant Shurtliff") is the owner of record of the Defendant Michael's Manor and of the Subject Property.  Her address of record with regards to said property is 727 Moran Street, Chubbuck, Idaho 83202-1743.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY
JESSICA MOSER
Attorneys at Law**

<u>STANDING OF PLAINTIFF</u>

6.  The Plaintiff has suffered damages as the result of the Defendants' actions and omissions, including the diversion of the Plaintiff's past and future resources, lost economic opportunity, and the frustration of the Plaintiff's mission.

7.  The Plaintiff's mission, as described above, has been frustrated by the Defendants' practices because the Defendants' violations of the FHA communicate to housing consumers and housing providers that discriminatory practices are permissible and that correctional remedies are not available, thereby hampering Plaintiff's efforts to educate the public on fair housing issues and to advance equal access to housing.

8.  The Plaintiff's mission has further been frustrated as the Defendants' violations of the FHA have reduced the pool of non-discriminatory rental housing available to tenants in the State of Idaho.

9.  In order to counteract the frustration of the Plaintiff's mission, the Plaintiff has had to devote significant resources to identify, investigate, document and take action to correct the Defendants' violations of the FHA, including but not limited to the incursion of litigation expenses.  As a result, the Plaintiff has actually diverted resources from other fair housing-related activities, including fair housing education and enforcement activities throughout the State of Idaho and the surrounding region.  Furthermore, the Plaintiff will necessarily incur additional expenses in the future to counteract the lingering effects of the Defendants' violations of the FHA through the monitoring of the Defendants' activities, publication and advertising costs, and the sponsorship of educational activities.

10.  As a direct result of the Defendants' actions and omissions as described below, the Plaintiff is an "aggrieved person", as that term is defined by the FHA.  42 U.S.C. §3601(i).  The

**VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL**

4

**KEN NAGY
JESSICA MOSER
Attorneys at Law**

Plaintiff has suffered and continues to suffer significant and irreparable loss and injury, and has sufficient standing to bring this action before this Court.

GENERAL ALLEGATIONS

11.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-10 above.

12.  L.H. is handicapped, as that term is defined at 42 U.S.C. §3602(h).  As a result of L.H.'s handicap, she requires the use of a support animal and requires reasonable accommodations pursuant to the FHA to afford her equal opportunity to use and enjoy a dwelling at the Subject Property (the words "handicap" and "disability" are used interchangeably herein).

13.  L.H.'s support animal is a dog which has been prescribed by her treating physician as treatment for her disability.

14.  In or about early May, 2011, L.H. was told by an employee of the Defendants that an apartment at the Subject Property would be coming available in the near future and permitted her to view the unit.  L.H. submitted an application to rent the apartment located at the Subject Property.  On her application, L.H. indicated that she has a support animal for her disability.

15.  Subsequent to submitting her application to rent an apartment at the Subject Property, L.H. contacted Andrew (last name currently unknown), the property manager for the Subject Property, on or about the 17th day of May, 2011 to inquire about the status of her application.  Andrew (last name currently unknown) told L.H. that she would not be permitted to rent an apartment at the Subject Property due to the presence of her support animal.  L.H. told Andrew (last name currently unknown) that she has a written prescription for her support animal from her treating physician because of her disability.  In response, Andrew (last name currently

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

5

unknown) told L.H. that it did not matter that she has a written prescription for her support animal from her treating physician, she would not be permitted to rent the apartment for which she applied.

17. Approximately one week after submitting her application to rent an apartment at the Subject Property, L.H. observed that the Defendants were advertising an apartment for rent at the Subject Property. L.H. contacted Andrew (last name currently unknown) again to inquire with regards to the status of her application. L.H. was again told by Andrew (last name currently unknown) that she would not be permitted to rent the apartment at the Subject Property due to the presence of her support animal.

18. The denial of a dwelling to L.H. due to the presence of her support animal constitutes a discriminatory policy in violation of the FHA and its implementing regulations on the basis of handicap, and L.H. was denied a reasonable accommodation in violation of the FHA. Furthermore, the Defendants have negligently failed to provide adequate training to their property manager regarding the requirements of the FHA and its implementing regulations.

19. As a result of the discriminatory and negligent treatment to which she was subjected by the Defendants, L.H. filed a complaint with the Plaintiff regarding the Defendant's conduct on or about the 17th day of May, 2011.

20. As the result of the complaint filed by L.H., the Plaintiff counseled L.H. with regards to her housing rights and options, and it immediately initiated an investigation of this matter. In counseling L.H. and investigating this matter, and as the result of the Defendants' discriminatory and negligent conduct, the Plaintiff has diverted its resources, it lost economic opportunity, and its mission has been frustrated.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

6

21.  On or about the 17th day of May, 2011, the Plaintiff conducted a recorded telephonic test of the Defendants in order to determine whether there is evidence supporting the allegations asserted by L.H.  During the course of that test, the Plaintiff's tester inquired with regards to the availability of an apartment and was told by the Defendants that a bedroom was coming available in the near future and was directed to contact the property manager, Andrew (last name currently unknown).

22.  On or about the 23rd day of May, 2011, the Plaintiff conducted a second recorded telephonic test of the Defendants by contacting Andrew, (last name currently unknown), the Defendants' property manager.  When the Plaintiff's tester told Andrew (last name currently unknown) that she is disabled and needs a support animal, Andrew (last name currently unknown) told the Plaintiff's tester that they do not have any disabled units available.  In response, the Plaintiff's tester told Andrew (last name currently unknown) that she does not need a disabled unit because she does not have a physical disability but instead a mental disability.  Andrew (last name currently unknown) told the Plaintiff's tester that they only allow support animals if they are for a physical disability.  The Plaintiff's tester repeatedly explained to Andrew (last name currently unknown) that the support animal is prescribed by her treating physician for her mental disability and repeatedly requested Andrew (last name currently unknown) to waive the rule prohibiting support animals at the Subject Property for mental disabilities, but he refused to waive the rule and refused a dwelling to the Plaintiff's tester.

23.  The denial of a dwelling to the Plaintiff's tester due to the presence of her support animal constitutes a violation of the FHA and its implementing regulations, and the Plaintiff's tester was denied a reasonable accommodation pursuant to the FHA.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

7

24.  As a result of the Plaintiff's investigation, it filed an administrative complaint with the United States Department of Housing and Urban Development (hereinafter "HUD") pursuant to 42 U.S.C. §3610 dated the 1st day of June, 2011.  Said administrative complaint remained pending with HUD until the 29th dayof September, 2011, at which time it was withdrawn by the Plaintiff in order to pursue a judicial remedy.

25.  As a result of the discriminatory and negligent conduct to which she had been subjected by the Defendants, L.H. filed an administrative complaint with HUD pursuant to 42 U.S.C. §3610 dated the 10th day of June, 2011.  Said administrative complaint currently remains pending with HUD.

26.  Due to the ongoing nature of the Defendants' conduct, said conduct constitutes a continuing violation.

## COUNT ONE—DISCRIMINATION ON THE BASIS OF "HANDICAP" IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS

27.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-26 above.

28.  The Defendants have discriminated in the sale or rental of, and otherwise made unavailable and denied, a dwelling on the basis of "handicap".  42 U.S.C. §3604(f)(1).

29.  The Defendants have discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "handicap".  42 U.S.C. §3604(f)(2).

30.  The Defendants have refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford equal opportunity to use and enjoy a dwelling.  42 U.S.C. §3604(f)(3)(B).

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

**KEN NAGY
JESSICA MOSER
Attorneys at Law**

31.  The Defendants made, printed or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap".  42 U.S.C. §3604(c).

32.  The Defendants have engaged in interference in the exercise or enjoyment of rights granted the victims by 42 U.S.C. §§3603 and 3604.  42 U.S.C. §3617.

33.  Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the victims.

<u>COUNT TWO—NEGLIGENCE</u>

34.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-33 above.

35.  The Defendants owed a duty of care to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff and L.H.

36.  It could have been reasonably anticipated or foreseen by the Defendants that their failure to use reasonable care might result in injury to the Plaintiff and to L.H.

37.  The Defendants were negligent in that they failed to use reasonable care to avoid injury and to prevent unreasonable, foreseeable risks of harm to the Plaintiff and to L.H. by failing to adequately train and supervise its agents and employees with regards to the requirements of the Fair Housing Act, 42 U.S.C. §3601 et seq., as well as its implementing regulations provided at 24 C.F.R. §100 et seq.

<u>DAMAGES</u>

38.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-37 above.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

9

39.  As the result of the actions and conduct of the Defendants, as described above, the Plaintiff has suffered significant and irreparable loss and injury.

40.  The Plaintiff is an "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and is an intended beneficiary of the protections and requirements of the statutes, laws and regulations referenced above.

41.  The Plaintiff has suffered actual damages as a result of its out-of-pocket expenses and past diversion of its resources, as described above and in the attached "Appendix A", in the amount of $41,828.40, which continue to accrue.

42.  The Plaintiff has suffered actual damages as a result of the necessary future diversion of its resources, as described above and in the attached "Appendix A", in the amount of $6,000.00.

43.  The Plaintiff has suffered actual damages as a result of lost economic opportunity, as described above and in the attached "Appendix A", in the amount of $1,000.00.

44.  The Plaintiff has suffered actual damages as a result of the frustration of its mission, as described above and in the attached "Appendix A", in the amount of $39,317.85.

45.  In addition to the injuries suffered by the Plaintiff, the Defendants have also caused significant and irreparable loss and injury to a number of identified and as-of-yet unidentified persons, including L.H.

46.  Said victims are "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and are intended beneficiaries of the protections and requirements of the statutes, laws and regulations referenced above.

47.  All victims of the Defendants' actions and conduct should be identified and compensated through a Victims' Compensation Fund.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

KEN NAGY
JESSICA MOSER
Attorneys at Law

48.  A Victims' Compensation Fund should be established in the amount of $253,776.10 to adequately compensate identified and as-of-yet unidentified victims of the Defendants' discriminatory conduct, as described in the attached "Appendix B", from which such victims should be compensated.  Said Victims' Compensation Fund should be established and administered as follows:

    a.  The Plaintiff shall be assigned the task of managing and administering the Victims' Compensation Fund.  The Plaintiff shall be compensated for all time spent administering said Fund at the rate of $45.88 per hour.  The Plaintiff shall keep detailed records of all tasks engaged in and shall submit copies of said records to the Court and the Defendants on a monthly basis.

    b.  Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Defendants shall deposit in an interest-bearing escrow account the total sum as determined by applying the calculation set forth in the attached Appendix B.

    c.  Any interest accruing to such Victims' Compensation Fund shall become a part of the fund and be utilized as set forth herein.

    d.  Within fifteen (15) days after the Defendants deposit funds in the Victims' Compensation Fund, the Plaintiff shall publish a Notice to Potential Victims of Housing Discrimination (hereinafter "Notice") in at least five daily newspapers serving the main population centers of the State of Idaho informing readers of the availability of compensatory funds.  The form and content of the Notice shall be approved by the Court at the time of the entry of the Court's order establishing the Victims' Compensation Fund.  The Notice shall be no smaller than three columns

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

11

by six inches and shall be published on three occasions in each newspaper.  The publication dates shall be separated from one another by at least 21 days, and at least two of the publication dates shall be a Sunday.  The Plaintiff shall send a copy of the Notice prior to each and every publication date to each of the following organizations: (1) Living Independent Network Corp. (LINC), 1878 Overland Road, Boise, Idaho 83705; (2) DisAbility Rights Idaho, 4477 Emerald Street, Suite B-100, Boise, Idaho 83706; Disability Action Center, 505 North Main Street, Moscow, Idaho 83843; and (3) Living Independently for Everyone (LIFE), P.O. Box 4185, 640 Pershing Avenue, Suite 7, Pocatello, Idaho 83201.

e.  Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Plaintiff shall send by first-class mail, postage prepaid, a copy of the Notice to each tenant who currently resides or who resided at any time at the subject property.

f.  Nothing in this section shall preclude the Plaintiff from making its own additional efforts at its own expense to locate and provide notice to potentially aggrieved persons.

g.  Allegedly aggrieved persons shall have one hundred-twenty (120) days from the date of the entry of an order by this Court creating a Victims' Compensation Fund to contact the Plaintiff in response to the Notice.  The Plaintiff shall investigate the claims of allegedly aggrieved persons and, within one hundred-eighty (180) days from the entry of an order by this Court creating a Victims' Compensation Fund, shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to each such persons.  The

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

Plaintiff will inform the Defendants in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim. The Defendants shall have fourteen (14) days to review the declaration and to provide to the Plaintiff any documents or information that it believes may refute the claim.

h. After receiving the Defendants' refutation, if any, the Plaintiff shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by the Defendants. When the Court issues an order approving or changing the Plaintiff's proposed distribution of funds for aggrieved persons, the Defendants shall, within ten (10) days of the Court's order, deliver to the Plaintiff checks payable to the aggrieved persons in the amounts approved by the Court. In no event shall the aggregate of all such checks exceed the sum of the Victims' Compensation Fund, including accrued interest and after deducting compensation to the Plaintiff as described above. No aggrieved persons shall be paid until he or she has executed and delivered to counsel for the Plaintiff a signed and notarized statement releasing the Defendants from all claims related to the subject property.

i. In the event that less than the total amount in the fund including interest is distributed to aggrieved persons, the remaining funds shall be submitted to an education fund to be drawn upon by the Plaintiff and other non-profit organizations for purposes of educating housing consumers and providers on the requirements of the Fair Housing Act. Said education fund shall be administered by Idaho Legal Aid Services, Inc.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

13

    j.   The Defendants shall permit the Plaintiff, upon reasonable notice, to review any records that may facilitate its determinations regarding the claims of allegedly aggrieved persons.

49.  The Court should award to the Plaintiff and against the Defendants punitive damages due to the intentional and willful nature of the Defendants' conduct in an amount to be determined by the Court.

50.  The Court should enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations.

51.  The Court should award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action, as provided for by statute and court rule.

52.  The Defendants should be held jointly and severally liable for any and all damages, including an award of attorney's fees and costs, awarded in this proceeding.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff Intermountain Fair Housing Council prays that the Court enter judgment against the Defendants as follows:

A.  That the Court find and declare that the actions of the Defendants constitute violations of the Fair Housing Act;

B.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for its out-of-pocket expenses and past diversion of resources in the amount of $41,828.40, which continue to accrue;

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

C.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the necessary future diversion of the Plaintiff's resources in the amount of $6,000.00;

D.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the Plaintiff's lost economic opportunity in the amount of $1,000.00;

E.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the frustration of the Plaintiff's mission in the amount of $39,317.85;

F.  That the Court enter an order establishing a Victims' Compensation Fund the amount of $253,776.10 by applying the calculation set forth in the attached Appendix B and to be administered according to the terms set forth in Paragraph 48 above;

G.  That the Court award to the Plaintiff and against the Defendants punitive damages due to the reckless or callous nature of the Defendant's conduct in an amount to be determined by the Court;

H.  That the Court enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA and its implementing regulations;

I.  That the Court award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action;

J.  That the Defendants be held jointly and severally liable for any and all damages, including an award of attorneys fees and costs, awarded in this proceeding; and

K.  That the Court order any further and additional relief as the interests of justice may require.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

15

<u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a

trial by jury on all issues.

DATED this __31st__ day of _____December_____, 2012.


_____/s/_____

KEN NAGY
Attorney for Plaintiff


_____/s/_____

JESSICA MOSER
Attorney for Plaintiff


ZOE ANN OLSON, being first duly sworn on his oath, deposes and says:

I am the Executive Director of the Intermountain Fair Housing Council, Inc. the Plaintiff
herein, that I have read the foregoing document, know well the contents thereof, and that the
facts therein stated are true to the best of my knowledge and belief.


_____/s/_____

ZOE ANN OLSON


STATE OF I D A H O   )
                     : ss
County of __ADA__    )


I, __Carrie Lynn House_____, a Notary Public for said
state, does hereby certify that on the __28th__ day of _____December_____, 2012,
personally appeared before me ZOE ANN OLSON, Executive Director of the Intermountain Fair
Housing Council, Inc. who, being by me first duly sworn, declared that he signed the foregoing
document as such, and that the statements therein contained are true and accurate as she verily
believes.

   SEAL
   Carrie House
   Notary Public
   State of Idaho

                             ___/s/ (Carrie House)_____
                             Notary Public in and for the State of __Idaho__
                             Residing at: __Boise, ID_____
                             My commission expires: __3/1/2013_____

VERIFIED COMPLAINT AND              16
DEMAND FOR JURY TRIAL
                                            **KEN NAGY**
                                            **JESSICA MOSER**
                                            **Attorneys at Law**

# APPENDIX A:

## PLAINTIFF IFHC'S MEMORANDUM OF DAMAGES

The Plaintiff IFHC has identified four categories of damages that it has suffered as the result of the Defendants' failure to comply with the FHA.  These categories are: (1) Past Diversion of Resources; (2) Future Diversion of Resources; (3) Lost Economic Opportunity; and (4) Frustration of Mission.  Each of these categories of damages have been recognized and awarded by various courts to organizational plaintiffs in previous fair housing cases.[1]

The following represents an itemization of the Plaintiff IFHC's damages:

### 1.  Out-of-Pocket Expenses and Past Diversion of Resources

The Plaintiff IFHC has incurred significant pre-litigation expenses as a result of the Defendants' discriminatory actions, which are constituted by its out-of-pocket expenses and its past diversion of resources.  The Plaintiff IFHC has sponsored training workshops in the Defendants' geographic area, and has engaged in site monitoring, investigation, complaint

---

[1] *See, Southern Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138 (Cent. Dist. Cal. 2007) (fair housing organization awarded $6,590.80 for diversion of resources and $29,065.32 for frustration of mission), *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (fair housing organization awarded $14,217.00 for the diversion of resources); *HUD v. Perland*, Fair Housing-Fair Lending Rptr. ¶25,136 (HUD ALJ 1998) (fair housing organization awarded $4,516 for the diversion of resources and $1,400 for the costs of future monitoring of the defendants); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F.Supp. 1213, *aff'd in pertinent part*, 908 F.3d 898 (2nd Cir. 1993) (fair housing organization awarded $20,000 for the diversion of resources); *HUD v. Jancik*, Fair Housing-Fair Lending Rptr. ¶25,058 (HUD ALJ 1993) (fair housing organization awarded $13,386 for the diversion of past and future resources and $9,000 for the financial opportunity lost as a result of the investigation and litigation of the case); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) (fair housing organization awarded $16,500 for out-of-pocket expenses and costs of future monitoring and training); *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D. Va. 1987) (fair housing organization awarded $2,300 for the diversion of resources and $10,000 for the frustration of its equal housing mission).

KEN NAGY
JESSICA MOSER
Attorneys at Law

preparation, counseling and other activities with regards to this matter.  As a result of these activities, it has incurred expenses as follows:

a.   Investigation and Counseling Costs:                          $7,510.55

b.   Educational efforts:                                                $10,521.84

c.   Cost of Deferred Actions:                                       $22,796.01

d.   Litigation costs and fees (as of initiation of formal litigation):     $1,000.00

Total Past Diversion of Resources:     $41,828.40

Further litigation of these matters will result in an increase in the Plaintiff IFHC's diversion of resources, as well as other damages.

## 2.  Future Diversion of Resources

The Plaintiff IFHC has an affirmative duty to ensure the Defendants' ongoing compliance with the FHA, with regards to both the subject property as well as any future developments in which the Defendants may participate.  Such monitoring activities include site visits, training of Defendants and their employees and agents, counseling of victims, and testing.

The Plaintiff IFHC expects to incur the following expenses as a result of the current violations:

a.  Future Advertising Costs:                                        $500.00

b.  Cost of future training:                                           $1,000.00

c. Costs of Future Monitoring/Testing:                           $4,500.00

Total Future Diversion of Resources:     $6,000.00

## 3.  Lost Economic Opportunity

Vigorous investigation and enforcement of fair housing complaints, including the property at issue herein, has caused the Plaintiff IFHC to divert limited resources and manpower

VERIFIED COMPLAINT AND                         18
DEMAND FOR JURY TRIAL

away from grant-writing activities.  The Plaintiff IFHC could reasonably expect to have obtained funding to sponsor fair housing training events in the amount of $1,000.00 if it had not been so diverted due to the Defendants' actions

    a.  Loss of Funding:                                $1,000.00

### 4.  Frustration of Mission

The investigation of the subject of this complaint, the counseling and training provided to the community, and the preparation of the administrative complaint have caused the Plaintiff IFHC to divert significant resources toward this proceeding and has undermined the work of furthering fair housing in the state of Idaho.

As a direct result of the Defendants' discriminatory actions, the Plaintiff IFHC's mission of furthering fair housing has been significantly frustrated, and the Plaintiff IFHC has had to devote, and will continue to devote, additional resources in order to counteract the past and ongoing effects of this discrimination.

Furthermore, the property at issue in this proceeding has constituted a formidable barrier to non-discriminatory housing, thereby undermining the mission of the Plaintiff IFHC in guaranteeing fair housing to all residents of the state.  The Plaintiff IFHC has determined that it will be necessary to educate housing consumers regarding fair housing requirements in order to counteract the effects of the Defendants' failure to comply with the FHA.

The Plaintiff IFHC measures the damage to its frustration as the total monetary damages that the Defendants' actions have cost to correct, including lost funding opportunities.

    a.  Frustration of Mission                          $39,317.85

**KEN NAGY**
**JESSICA MOSER**
**Attorneys at Law**

## **TOTAL DAMAGES**

The Plaintiff IFHC calculates its total damages in this proceeding as follows:

1. Out-of Pocket Expenses and Past Diversion of Resources:          $41,828.40

2. Future Diversion of Resources:                                               $6,000.00

3. Lost Economic Opportunity:                                                 $1,000.00

4. Frustration of Mission:                                                         $39,317.85

                                                         Total Damages:    $88,146.25

**KEN NAGY**
**JESSICA MOSER**
**Attorneys at Law**

## APPENDIX B:

## CALCULATION OF VICTIMS' COMPENSATION FUND

### I.  INTRODUCTION

In addition to the damages incurred by the Plaintiffs, a number identified and of as-of-yet unidentified victims have also suffered damages as the result of the Defendants' discriminatory actions.  In furtherance of the Plaintiff IFHC's mission, a Victims' Compensation Fund should be created in order to identify and obtain adequate compensation for such victims.

The Federal District Court for the District of Idaho has frequently ordered the establishment of a Victims' Compensation Fund in previous actions brought pursuant to the Fair Housing Act.  *See, United States of America and Intermountain Fair Housing Council v. Stealth Investment, LLC, et al.*, Case No. CV 07-500-E-EJL (Consent Decree entered May 29, 2008 establishing Victims' Compensation Fund in the amount of $12,500.00); *United States of America v. Taigen & Sons, Inc., et al.*, Case No. CV 01-337-N-EJL (Consent Order entered July 18, 2006 establishing Victims' Compensation Fund in the amount of $55,000.00); *United States of America v. Thomas Development Co., et al.*, Case No. CV 02-68-C-EJL (Consent Order entered March 11, 2005 establishing Victims' Compensation Fund in the amount of $100,000.00); *United States of America v. S-Sixteen Ltd. Partnership*, Case No. CV 03-154-S-BLW (Consent Order entered March 14, 2005 establishing Victims' Compensation Fund in the amount of $40,000.00); *United States of America v. Pacific Northwest Electric, Inc., et al.*, Case No. Civil No. 01-19-S-BLW (Consent Decree entered October 21, 2003 establishing Victims' Compensation Fund in the amount of $29,000.00); *United States of America v. Virginia L. Vanderpool, et al.*, Case No. CIV 01-78-S-BLW (Consent Order entered April 27, 2002 establishing Victims' Compensation Fund in the amount of $30,000.00); *United States of*

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

21

*America, et al., v. Duane B. Hagadone, et al.*, Case No. CV 97-603-N-RHW (Consent Order entered July 6, 1999 establishing Victims' Compensation Fund in the amount of $30,000.00).

Said orders, however, do not contain a description of how the amount of such a fund was calculated.  The Victims' Compensation Fund that should be ordered herein should be calculated according to the underlying principles and using the applicable figures set forth below.

## II.  UNDERLYING PRINCIPLES

A.  The number of units that are owned and managed by the Defendants is 39.

B.  The number of months that the Defendants has managed property that is subject to the requirements of the Fair Housing Act, as of the filing of this complaint, is 219.

C.  On average, each of the units could be expected to be rented to a new tenant every twelve months.

D.  The U.S. Census Bureau Population Survey of 2000 indicates that, for the state of Idaho, persons (age 5+) with a disability comprised 13.0% of the population.

E.  The amount of damages awarded to victims of disability discrimination in violation of the Fair Housing Act in administrative proceedings before the United States Department of Housing and Urban Development has been $2,500.00 or more (this is a conservative estimate on the amount of damages that should be awarded to a victim of such discrimination, and is therefore not intended any way to be a statement of the damages that are reasonably owing to individual victims, which instead must be determined on a case by case basis with full consideration of the facts of each such case).

F.  The Plaintiff IFHC is the organization best equipped and situated to administer the fund.

KEN NAGY
JESSICA MOSER
Attorneys at Law

G.  The Plaintiff IFHC should be compensated at its hourly overhead rate of $47.57 per hour in the administration of the fund.

H.  The number of hours that it will take to administer the fund and complete compensation of victims can reasonably be expected to be three hours per identified victim.

I.  Administration of the fund will result in the incursion of out-of-pocket expenses, such as advertising and travel costs, in the amount of at least $100.00 per identified victim.

### III.  CALCULATION OF AMOUNT OF VICTIMS' COMPENSATION FUND

The total amount of the Victims' Compensation Fund should be calculated as follows:

1.  Step One: Estimated Compensation for Victims.  The amount of funds that can reasonably be expected to be necessary to compensate victims of discrimination by the above-named Defendants, as they become identified, should be calculated as follows:

First, the total number of months that the above-named Defendants have owned or managed the Subject Property is divided by the estimated average duration of tenancy in months, and multiplied by the total number of units at the subject property.  This represents the total number of tenants or applicants at the subject property over the relevant time period.  This number can be expressed as follows:

$$(219/12) \textbf{ X } 39 = \textbf{711.75} \qquad\qquad (1.1)$$

Second, the above product is multiplied by 13.0% to determine the number who faced discrimination based on disability:

$$(711.75 \textbf{ X } 0.130) = \textbf{92.5275} \qquad\qquad (1.2)$$

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

23

    <u>Third</u>, the sum from equation (1.2) above is multiplied by an estimated damage award to each Victim (which is $2,500), arriving at the total amount necessary to compensate Victims:

    92.5275 **X** $2,500 = **$231,318.75**                    *(1.3)*

    2.  <u>Step Two: Estimated Compensation for the Fund Administrator.</u>  The amount of funds that can reasonably be expected to be necessary to compensate the fund administrator for work performed in administering the Victim's Compensation Fund should be calculated as follows:

    The estimated total number of Victims (from equation 1.2, above) is multiplied by the number of hours necessary to administer the fund per identified Victim (which is 3), times the Plaintiff/Intervener's operational rate (which is $47.57 per hour):

    92.5275 **X** 3 **X** $47.57 = **$13,204.60**                    *(2.1)*

    3.  <u>Step Three</u>.  The amount of funds that can reasonably be expected to be necessarily incurred by the fund administrator as out-of-pocket expenses in administering the Victims' Compensation Fund should be calculated as follows:

    The estimated total number of Victims (from equation 1.2, above) is multiplied by the amount that the Plaintiff/Intervener can be expected to incur in out-of-pocket costs in identifying and compensating each identified Victim (which is $100):

    92.5275 **X** $100 = **$9,252.75**                    *(3.1)*

    4.  <u>Step Four</u>.  The total amount of the Victims' Compensation Fund is the amount determined by adding the results of Step One, Step Two and Step Three, as set forth above:

    **TOTAL = $231,318.75 + $13,204.60 + $9,252.75 = $253,776.10**      *(4.1)*

VERIFIED COMPLAINT AND                    24
DEMAND FOR JURY TRIAL